UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATHANIEL GATES,

                              Plaintiff,

                                                          **Hon. Hugh B. Scott**

                    v.                                    02CV496

                                                          (CONSENT)

DONALD SELSKY, et al.,                                    **Order**

                              Defendants.


        Before the Court are (a) plaintiff's motion for summary judgment (Docket No. 47), and

(b) defendants' cross-motion for summary judgment (Docket No. 56).  The parties consented to

proceed before the undersigned as Magistrate Judge (Docket No. 53, Mar. 7, 2005).  Responses

to plaintiff's motion eventually were due by June 30, 2005 (as extended at the request of defense

counsel, with the understanding that they would cross-move), and replies (if any) were due by

August 1, 2005, with the motion deemed submitted on the latter date (Docket Nos. 51, 52, 55,

65).  Responses to the defense cross-motion were due by August 1, 2005, and that motion was

deemed submitted on August 1, 2005 (Docket No. 65).  Defendants submitted for in camera

review four pages from an exhibit to one of the defendant's Declarations[1].  The Court issued an

Order to Show Cause, returnable August 3, 2005, on why these documents should be reviewed in

camera without service upon plaintiff (Docket No. 66).  The Court then ordered defendants either

to serve and file these four documents or they would be excluded from judicial consideration

_____

        [1]See Docket No. 58, Bradt Decl., Ex. B88-91.

(Docket No. 68).  That Order gave defendants until August 19 (seven business days from entry of

the Order) in order to serve and file the four documents (id.).  Defendants filed and served these

documents (Docket No. 69, Decl., Ex. A, with certificate of service).

## BACKGROUND

The present action involves an August 1999 incident in the Attica Correctional Facility

which resulted in a Tier III administrative hearing in which plaintiff, an inmate proceeding pro

se, now claims violated his constitutional rights to due process of law.  Plaintiff has amended the

Complaint several times (Docket Nos. 17 (motion for leave to amend), 25 (Order granting leave

to amend), 27 (Amended Compl.), 30 (motion for leave to amend), 35 (motion for extension of

time to file amended complaint), 36 (Order granting leave to amend), 37 (motion to amend), 39

(Order granting leave), 41 (Amended Complaint)).  He now alleges a single cause of action for

deprivation of due process under the Fourteenth Amendment (Docket No. 41, Am. Compl. ¶¶ 26,

27).  Plaintiff seeks a declaratory judgment that defendants' conduct violated his constitutional

rights; $150,000 in compensatory damages against defendant Selsky, $100,000 against defendant

Bradt, and $75,000 against defendant Westermeier; punitive damages of $20,000 against each

defendant, and other relief (Docket No. 41, Am. Compl., Relief ¶¶ (A)-(D)).

*Factual Allegations*

According to plaintiff's statement of undisputed facts (Docket No. 50)[2] plaintiff was

accused in a misbehavior report on August 10, 1999, by correction officer Garbacz for violating

prison rules 104.11, violent conduct; 104.13, creating a disturbance; 100.11, assault on staff;

---

[2]Defendants' Response to plaintiff's Statement, Docket No. 57, generally does not dispute
plaintiff's factual allegations, id. at pages 10-12, but defendants object that plaintiff fails to cite
to the evidentiary record in his Statement, Docket No. 64, Defs. Memo. at 6.

106.10, refusing a direct order; and 115.10, refusing a search or frisk (Docket No. 50 ¶ 4).  Later

that day, plaintiff was accused in a second misbehavior report by correction officer Verrastro for

violation of prison rules 113.10, weapon, and 113.25, drug possession (id. ¶ 5).  Plaintiff was

immediately removed from general prison population and placed in  housing unit.  Once he was

served with the misbehavior reports, plaintiff selected defendant Correction Officer

R. Westermeier as his employee assistant.  (Id. ¶ 6.)  Plaintiff claims that Westermeier denied

him assistance in responding to the second misbehavior report (id. ¶ 7).  A combined disciplinary

hearing was conducted before defendant Captain Mark Bradt, on September 7, 1999 (id. ¶¶ 8, 9;

see Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 2).  There, plaintiff objected to

Westermeier not providing assistance regarding the second report (Docket No. 50, Pl. Statement

¶ 9).  The hearing was conducted in disregard to plaintiff's objections and plaintiff was found

guilty of all charges (id. ¶¶ 10-11).  He was sentenced to twelve months in special housing unit

(or "SHU"), loss of package, commissary, and telephone privileges, eighteen months loss of

personal clothing, and recommendation of loss of good time (id. ¶ 11; Docket No. 57, Defs.

Statement ¶ 42).  Plaintiff filed a timely appeal to defendant Donald Selsky, director of Special

Housing Units within the Department of Correctional Services ("DOCS"), alleging that he was

denied assistance and was not informed, notified, or allowed to comment upon the evidence

against him (Docket No. 50, Pl. Statement ¶ 12).  On or about November 17, 1999, defendant

Selsky affirmed the disciplinary hearing's determination (id. ¶ 13).

Plaintiff claims that he was held in special housing unit for 365 days due to defendant

Selsky's failure to reverse this disciplinary decision.  (Docket No. 49, Pl. Aff. ¶ 22.)  Defendants,

however, contend that plaintiff only served six months in special housing unit on defendant

Bradt's determination (Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 15).  Selsky

modified Bradt's determination on the loss of good time, reducing it from twelve months to six

(Docket No. 62, Selsky Decl. ¶ 19, Ex. C121-A).  Plaintiff filed an Article 78 petition in

New York State Supreme Court challenging this determination on or about May 31, 2000

(Docket No. 50, Pl. Statement ¶ 14; see Docket No. 59, Fritschi Decl. ¶¶ 4, 5, Ex. A).  Selsky

administratively reversed the misbehavior reports; plaintiff claims that Selsky conceded to

violation of plaintiff's rights (Docket No. 50, Pl. Statement ¶ 15; see also Docket No. 57, Defs.

Statement, Response to Pl. Statement ¶ 15 (agreeing that Selsky administratively reversed and

expunged the disciplinary reports)).  Selsky issued a memorandum on July 21, 2000, expunging

the second misbehavior report stating the reason for this action was because it was "modified

after discussion with AG's office [d]ue to denial of assistance on charges for C.O. Verrastro

report."  (Docket No. 50, Pl. Statement ¶ 16; Docket No. 57, Defs. Statement, Response to Pl.

Statement ¶ 16; Docket No. 62, Selsky Decl. ¶ 19, Ex. C121-A.)  Selsky then issued a second

memorandum on August 22, 2000, providing a complete expungement of all charges, again

allegedly reversed following discussion with the Attorney General's office "due to failure to

provide inmate with notice that certain documentary evidence would be considered" (Docket

No. 50, Pl. Statement ¶ 17; Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 17;

Docket No. 62, Selsky Decl. ¶ 23, Ex. C000123).  Selsky submitted these memoranda in state

court as support for his motion to dismiss the Article 78 petition as being moot (Docket No. 50,

Pl. Statement ¶ 18; Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 18; see Docket

No. 59, Fritschi Decl. Ex. B).

*Plaintiff's Motion*

Prior to his release from Attica Correctional Facility on parole (see Docket No. 57, Defs. Statement ¶ 81), plaintiff moved for summary judgment (Docket No. 47).  He poses four issues for resolution with his motion:  (1) whether he demonstrated a "liberty interest" for his twelve months in special housing unit as being atypical and significant hardship for inmates; (2) whether defendants are barred by collateral estoppel from relitigating the due process issues for denial of meaningful assistance and furnishing notice of evidence against him; (3) whether defendants are liable for violations of plaintiff's due process rights; and (4) whether defendants are shielded by qualified immunity.  (Docket No. 48, Pl. Memo. at (2)).

*Defendants' Cross-Motion*

Defendants cross-moved for an order denying plaintiff summary judgment and for summary judgment to them to dismiss the Complaint (Docket No. 55).  According to defendants, plaintiff had a list of employee assistants that included defendant correction officer Robert Westermeier, but plaintiff did not select him (Docket No. 57, Defs. Statement ¶¶ 6, 7; Docket No. 58, Bradt Decl. ¶ 20, Ex. B, at 000092).  Plaintiff testified that Westermeier was not his employee assistant (Docket No. 57, Defs. Statement ¶ 9; Docket No. 61, Defs. Atty. Decl. Ex. A, Pl. EBT Tr. at 48).  Westermeier did meet with potential witnesses who declined to participate (Docket No. 57, Defs. Statement ¶¶ 12-16).  Defendant Bradt, as hearing officer, had sole discretion to affirm the charges based on the evidence presented to him and had discretion to impose penalties (Docket No. 57, Defs. Statement ¶¶ 25-26; Docket No. 62, Selsky Decl. ¶¶ 5, 6).  Bradt interrogated those of plaintiff's identified witnesses who agreed to participate; all said they saw the incident and saw plaintiff had complied with the search procedures (Docket No. 57,

5

Defs. Statement ¶¶ 28-31).  Bradt then took the testimony of two officers (id. ¶ 33).  Bradt states

in his Declaration that he relied upon a confidential statement made by another officer (Docket

No. 58, ¶¶ 12-13, 14).  These documents were subject to the Order to Show Cause (see Docket

Nos. 66 (Order to Show Cause), 68 (Order compelling filing and service), 69 (defendants'

production of documents)).

## DISCUSSION

I.      Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c).  The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists.  In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.

Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co.

v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby,

477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must

demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986), the party against whom summary judgment is sought, however, "must do more than

simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving

party must come forward with specific facts showing that there is a genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

II.      Plaintiff's Motion

A.      Liberty Interest

For plaintiff's due process violation claim, he has to establish that he lost a cognizable liberty interest.  Under the analysis of Sandin v. Conner, 515 U.S. 472, 484 (1995), and its progeny, plaintiff argues that he suffered a loss of liberty for being placed in SHU for twelve months.  In this Circuit, three factors must be evaluated to determine if an inmate has a constitutionally significant liberty interest apart from the normal deprivations inherent with imprisonment; the effect of segregation on the length of the inmate's imprisonment, comparison of conditions in SHU with that of the general population, and the duration of the segregation. Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998).  On the duration of segregation element, prolonged confinement in SHU, or a sentence for prolonged confinement, has been held in this Circuit to be atypical and a deprivation of an inmate's liberty.  See Colon v. Howard, 215 F.3d 227 (2d Cir. 2000) (305 days SHU confinement); Sims v. Artuz, 230 F.3d 14 (2d Cir. 2000) (7 months SHU confinement in restraints, aggregated sentences to SHU of 3½ years); Lee v. Coughlin, 26 F. Supp. 2d 615 (S.D.N.Y. 1998) (376 days SHU confinement); see also Giano v. Selsky, 238 F.3d 223, 225-26 (2d Cir. 2001) (125 days SHU confinement in new facility after 670 days confinement in former facility, Second Circuit aggregated two confinements).

Plaintiff complains that being in maximum security reduced his chances to being released on parole.  (Docket No. 48, Pl. Memo. at 5[3].)  Plaintiff claims that he was confined to special housing unit for 365 days, with loss of packages, commissary, telephone calls, and loss of access to personal clothes for eighteen months, constituting a departure from ordinary confinement to require Sandin due process protections (id.).  See Colon v. Howard, 213 F.3d 227 (2d Cir. 2000); Lee v. Coughlin, 26 F. Supp. 2d 615 (S.D.N.Y. 1998).

Defendants, however, contend that plaintiff was confined to the special housing unit on Bradt's adoption of the misbehavior reports at issue here for only six months (Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 15; Docket No. 62, Selsky Decl. ¶¶ 24-27, 29-31, Ex. D131-34), suggesting that an issue of fact exists.  Selsky states that, by the time he reversed the misbehavior reports, plaintiff had served all the special housing unit time imposed by Bradt (Docket No. 62, Selsky Decl. ¶ 24), but plaintiff meanwhile accumulated other misbehavior reports which resulted in penalties that he served consecutively to the SHU time he had under the misbehavior reports at issue in this case (id. ¶¶ 25-26).  When Selsky reversed Bradt's determination, the time plaintiff served was credited to other misbehavior penalties (id. ¶¶ 27, 29-31, Ex. D131-34).  They contend that, as to Selsky himself, at most he would be liable for three months (from when he initially affirmed Bradt's decision until Selsky's expungement of the discipline) (Docket No. 64, Defs. Memo. at 8 n.3).  Defendants conclude that the conditions within SHU are not dramatically different from general prison population (id. at 8-9, citing Husbands v. McClellan, 990 F. Supp. 214, 218-19 (W.D.N.Y. 1998) (Larimer, Ch. J.)).

---

[3]Dated March 4, 2005, before plaintiff actually being released on parole in May 11, 2005. Docket No. 61, Defs. Atty. Decl. ¶ 10, Ex. B.

Plaintiff was placed in special housing unit on August 10, 1999, following the incident, and defendant Selsky expunged the misbehavior reports on August 20, 2000.  In Sims v. Artuz, 230 F.3d 14, 23 (2d Cir. 2000), the Second Circuit held that a sentence of one year in SHU was a sufficient length to be atypical under Sandin.  Here, defendants argue that plaintiff was confined only six months in SHU.  But the fact he was sentenced to twice that term is sufficient length to be atypical. Therefore, plaintiff has established a liberty interest that possibly was infringed by defendants.

B.      Collateral Estoppel

Plaintiff contends that the order dismissing his Article 78 petition was a judgment that collaterally estops defendants' defense (see Docket No. 48, Pl. Memo. at 6-7).  Defendants argue that the Article 78 proceeding has no collateral estoppel effect on them in this action since that proceeding was dismissed as moot. (Docket No. 64, Defs. Memo. at 6-7.)  Plaintiff concedes that an order was entered mooting his petition (Docket No. 48, Pl. Memo. at 7).  That order, however, only dismissed the petition as moot (Docket No. 59, Fritschi Decl. Ex. C), without granting the relief requested (cf. Docket No. 48, Pl. Memo. at 7).  Absent a prior judgment on the merits of the petition, there is no judgment to collaterally estop defendants.  Defendant Selsky's memoranda (the rationale plaintiff claims for deeming his Article 78 petition moot, cf. Docket No. 48, Pl. Memo. at 8-10) is not a judgment (Docket No. 64, Defs. Memo. at 7).  At most, it is evidence and a possible admission, but by itself it lacks preclusive effect.

C.      Due Process Violation

Plaintiff argues that each defendant is personally liable for their respective roles in this matter.  Defendant Westermeier was the assigned employee assistant but allegedly failed to

9

provide that assistance to plaintiff.  Defendant Bradt was the hearing officer and defendant Selsky was the appellate review official; both disregarded plaintiff's two objections to the disciplinary hearing that he was deprived assistance and was not informed of the evidence against him. (Docket No. 48, Pl. Memo. at 10-11.)

               1.      Westermeier as Employee Assistant

Plaintiff here objects to the quality of the employee assistance afforded him by defendant Westermeier.  Westermeier substituted for one of the employee assistants plaintiff previously selected, contacting the witnesses plaintiff identified and reporting the results of these inquires (that either the witnesses did not observe anything or declined to testify) to him.

According to the disciplinary hearing record, plaintiff was told that he was not being provided with an employee assistant for the second misbehavior report for weapon possession, drug possession, smuggling, and a facility visiting violation because he was not confined in SHU on that report (Docket No. 58, Bradt Decl. Ex. A12, 8).  But plaintiff's request for employee assistance and the form submitted for his signature by Westermeier indicated that the named assistants were for two misbehavior reports (id. Ex. A92, 97).

               a.      Right to Employee Assistance in Disciplinary Proceedings

The United States Court of Appeals for the Second Circuit in Eng established for inmates the limited constitutional right to "some assistance" to them while they are in SHU or otherwise disabled by being transferred to another facility while their disciplinary proceedings were pending.  Eng v. Coughlin, 858 F.2d 889, 897-98 (2d Cir. 1988).  This assistance must be provided in good faith and in the best interest of the inmate, id. at 898.  Recognizing that an inmate in SHU has an extremely limited ability to prepare his defense for a disciplinary hearing

(such as to formulate a defense, collect statements, interview witnesses, compile documentary evidence), id. at 897, an employee assistant, at a minimum, is to perform pre-hearing investigatory tasks that the inmate would have done but for his incarceration in SHU or other disability.  id. at 898; Pilgrim v. Luther, No. 01 Civ. 8995, 2003 U.S. Dist. LEXIS 2933, at *18 (S.D.N.Y. Feb. 27, 2003).   An inmate may waive this limited right to assistance, see, e.g., Jermonsen v. Coughlin, No. 86 CV 208, 2001 U.S. Dist. LEXIS 23577, at *37 (N.D.N.Y. July 25, 2001) (Peebles, Mag. J.).

The employee assistant is to do what the inmate instructs him to do.  Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993); Dawes v. Carpenter, 899 F. Supp. 892, 896 (N.D.N.Y. 1995). But an inmate is not entitled to the employee assistant serving as his advocate or counsel, Jackson v. Johnson, 30 F. Supp. 2d 613, 619 (S.D.N.Y. 1998) (Peck, Mag. J.), or to have that assistant serve as a private investigator, Shepard v. Coughlin, No. 91 Civ. 8725, 1993 U.S. Dist. LEXIS 3170, at *13 (S.D.N.Y. Mar. 16, 1993).  The assistant only acts as the inmate's surrogate, Samuels v. Selsky, No. 01 Civ. 8235, 2003 U.S. Dist. LEXIS 19162, at *36 (S.D.N.Y. Oct. 24, 2003) (quoting Jackson, supra, 30 F. Supp. 2d at 619, internal citation omitted).  The inmate also is not entitled to the assistant of his choice, Jermonsen, supra, 2001 U.S. Dist. LEXIS 23577, at *36, state regulations only afford the inmate the opportunity to select an assistant of his choice and do not require that this choice be honored, Samuels, supra, 2003 U.S. Dist. LEXIS 19162, at *38-39; Dawes v. Selsky, 265 A.D.2d 825, 696 N.Y.S.2d 327, 328 (4th Dep't 1999).

Failing to provide assistance without a valid reason may be the basis for a § 1983 claim, with the burden of proving a rationale for declining to assist the inmate upon the employee assistant, Fay v. Coughlin, 893 F.2d 475, 478 (2d Cir. 1990) (per curiam); Ayers v. Ryan, 152

F.3d 77, 81 (2d Cir. 1998).  On one extreme, an assigned assistant who does nothing to assist an inmate "has failed to accord the prisoner his limited constitutional due process right of assistance."  Eng, supra, 858 F.2d at 898.  But the United States District Court for the Southern District of New York evaluated the adequacy of the assistant's performance on a harmless error analysis, Samuels, supra, 2003 U.S. Dist. LEXIS 19162, *36, *38 (citing cases, holding plaintiff was disciplined based upon other evidence); but cf. Pilgrim, supra, 2003 U.S. Dist. LEXIS 2933, at *19 (ultimate outcome of disciplinary hearing not determinative of whether right to assistance was violated).  Courts have found assistance to be adequate when a replacement assistant interviewed witnesses but failed to tell the inmate, Silva v. Coughlin, No. 89 Civ. 8584, 1992 U.S. Dist. LEXIS 6732, at *16-20 (S.D.N.Y. May 18, 1992), aff'd, 992 F.2d 20 (2d Cir. 1993), or when the inmate alleged lack of assistance in finding documents, courts found that the documents did not exist, Mays v. Mahoney, No. 91 Civ. 3435, 1993 U.S. Dist. LEXIS 19234, * 17-19 (S.D.N.Y. Nov. 23, 1993).  This Court held that, where an employee assistant interviewed witnesses and reported to the inmate, nothing else was required of the assistant, Jermosen v. Coughlin, No. 89 CV 1140, 1993 U.S. Dist. LEXIS 11364, at *10-12 (W.D.N.Y. Aug. 5, 1993) (Elfvin, J.).

> b.      Application

Here, defendant Westermeier was covering for another employee who plaintiff identified as his assistant.  Cf. Lee v. Coughlin, 902 F. Supp. 424, 432 (S.D.N.Y. 1995) (defendant substituted for three chosen assistants, nothing in record why chosen assistants were not available for duration of disciplinary hearing); Silva, supra, 1992 U.S. Dist. LEXIS 7323, at *20-21 (substitute assistant), aff'd, 992 F.2d 20 (2d Cir. 1993).  Westermeier questioned several of

plaintiff's witnesses, securing signatures of those inmates to forms in which they declined to testify (Docket No. 63, Westermeier Decl. ¶¶ 10-12), meeting with plaintiff one time (id. ¶¶ 13-19).

Plaintiff complains that he gave Westermeier a list of potential witnesses and list of questions to be asked each witness, but Westermeier failed to interview these potential witnesses (Docket No. 49, Pl. Aff. ¶ 15; Docket No. 50, Pl. Statement ¶ 7; Docket No. 1, Compl. ¶¶ 19, 20; Docket No. 27, Am. Compl. ¶ 11; Docket No. 41, (2d) Am. Compl. ¶ 11; cf. Docket No. 57, Defs. Response to Pl.'s Statement ¶ 7). Westermeier met with some of the witnesses plaintiff identified and all signed forms declining to participate (Docket No. 57, Defs. Statement ¶¶ 10-16), meeting with plaintiff to present the assault report (id. ¶¶ 17-23). Plaintiff, however, does not state how this assistance was inadequate.

Defendants contend, however, that plaintiff did not select Westermeier as his employee assistant (Docket No. 58, Bradt Decl. ¶ 20, Ex. B92; Docket No. 63, Westermeier Decl. ¶ 7; Docket No. 57, Defs. Statement ¶¶ 7-9, Defs. Response ¶¶ 6-7; see also Docket No. 61, Longo Decl., Ex. A, Tr. at 48-50), but Westermeier filled in for plaintiff's assistant on August 13, 1999 (Docket No. 63, Westermeier Decl. ¶¶ 8-9; Docket No. 57, Defs. Statement ¶¶ 11-12). They argue (without citation to authority) that, as a substitute for plaintiff's assistant, Westermeier "did not bear the responsibility of providing plaintiff with the full measure of assistance to which plaintiff claims he was entitled" (Docket No. 64, Defs. Memo. at 17) or, alternatively, that Westermeier is entitled to qualified immunity because it was not unreasonable for him to interview witnesses and to provide documents to plaintiff (id. at 18). The employee assistant, even one substituting for another assistant, owes the inmate a duty to the provision of requested

services in good faith and in the best interest of that inmate, see Eng, supra, 858 F.2d at 898, and perform as instructed by the inmate, Silva, supra, 992 F.2d at 22.  While plaintiff declined to sign the form Westermeier presented following their interview (Docket No. 63, Westermeier Decl. ¶ 17, Ex. A97), that action did not constitute a waiver of the right to assistance.

Using the harmless error analysis from the Southern District of New York, the fact that Westermeier, rather than plaintiff's selected assistant, conducted the interviews had no bearing on the ultimate outcome of his disciplinary proceeding.  Westermeier posed two questions to four of fifteen inmate witnesses plaintiff identified (Docket No. 64, Defs. Memo. at 17; Docket No. 63, Westermeier Decl. ¶¶ 10-13, Ex. A97).  During the disciplinary hearing, plaintiff stated that he had other, unspecified questions he wanted asked of these witnesses that were not posed by the assistant (Docket No. 64, Defs. Memo. at 17; Docket No. 58, Bradt Decl. ¶¶ 27-28, Ex. A3).  Hearing officer Bradt reduced the number of potential witnesses from fifteen (or eleven willing to testify) to five to avoid redundancy (Docket No. 58, Bradt Decl. ¶ 27, Ex. A3, 4).  Bradt then asked the five witnesses the four questions plaintiff wanted posed (id. ¶ 31, Ex. A12-28).  In a later deposition, plaintiff testified that he wanted an assistant to investigate whether he was set up on the contraband misbehavior report (see Docket No. 64, Defs. Memo. at 19-20, quoting Docket No. 61, Longo Decl., Ex. A, Tr. at 48-50).  But the employee assistant's role is not to serve as a private investigator for the inmate.  Shepard, supra, 1993 U.S. Dist. LEXIS 3170, at *13.

Any prejudice arising from Westermeier's actions would concern the four inmates who declined to testify.  Plaintiff does not make a proffer of what these inmates may have witnessed or testified to had Westermeier obtained their statements or whether their failure to testify was

due to Westermeier.  Nevertheless, Bradt restricted the number of witnesses to five and plaintiff

does not state how the reluctant four witnesses would have testified differently than the five he

called to testify (that Westermeier first interviewed).  Despite Selsky's later reduction and

reversal of disciplinary action due to the issue of employee assistance, Westermeier limited role

as employee assistant did not have a prejudicial effect on plaintiff's disciplinary hearing.  See

Samuels, supra, 2003 U.S. Dist. LEXIS 19162, at *39.  Plaintiff, therefore did not state a due

process claim against Westermeier.

2.      Bradt as Hearing Officer

Plaintiff alleges that Bradt is liable for his conduct of the disciplinary hearing as the

hearing officer by depriving him of employee assistance and by not affording plaintiff access to

the evidence against him.  Defendants counter that plaintiff made only conclusory allegations

insufficient to grant him summary judgment (Docket No. 64, Defs. Memo. at 18).  Plaintiff

makes no specific allegations of the flaws in Bradt's conduct of the proceedings against plaintiff.

Alternatively, defendants argue that Bradt should enjoy qualified immunity because, after hearing

the witnesses called on plaintiff's behalf, it was reasonable for him not to call the other witnesses

plaintiff identified (id. at 23).

As a hearing officer, Bradt could refuse to call witnesses for irrelevance, lack of necessity

or the hazards presented in that case.  See Wolff v. McDonnell, 418 U.S. 539, 566 (1974);

Russell v. Selsky, 35 F.3d 55, 59 (2d Cir. 1994).  Plaintiff, when informed that four of his

original fifteen witnesses declined to testify and not all eleven witnesses would be heard, called

five witnesses.  But issues of fact remain regarding not informing plaintiff of the evidence against

him, as discussed below.

3.        Selsky

As for Selsky, plaintiff faults Selsky for initially affirming Bradt's determination.

Defendants argue that he is responsible only from when he affirmed plaintiff's disciplinary

determination on November 17, 1999, to his expunging of the charges (Docket No. 64, Defs.

Memo. at 8 n.3, 23).  Since they believe Bradt is not liable, defendants conclude Selsky also is

not liable (id. at 23).  They also argue that administrative appellate review is not a due process

right, or one currently recognized in this Circuit (id. at 23-24 & n.5), hence entitling Selsky to

qualified immunity.

D.        Qualified Immunity

Plaintiff argues that defendants should not enjoy qualified immunity.  He outlines the

existing precedent as of 1999 that established his rights to minimal due process in his

disciplinary hearing (Docket No. 48, Pl. Memo. at 12-13).  As stated above for each defendant

individually, each claims qualified immunity either because their actions were reasonable under

the then-current state of the law or no legal requirement existed to make them liable.  In

particular, as to Selsky, plaintiff does not argue how he does not enjoy immunity given the lack

of a constitutional right to an administrative appeal of a disciplinary proceeding.

When confronted by a claim of qualified immunity, one of the first questions for the

Court to resolve is do the facts, taken in the light most favorable to the party asserting the injury,

show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194,

201 (2001).  As required by the Saucier Court, this Court first considered (above) the

constitutional question, then considered the qualified immunity question, id.  Government

officials performing discretionary functions generally are shielded by qualified immunity from

liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993),

"insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"If it was objectively reasonable for the defendant to believe that his act did not violate the

plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified

immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga,

82 F.3d 563, 568-69 (2d Cir. 1996).

III.    Defendants' Cross-Motion

        Defendants contend, first, that plaintiff failed adequately to move for summary judgment

by not submitting evidence in support of his motion and violated this Court's local rules by not

including citations to the record with his statement of undisputed facts (Docket No. 64, Defs.

Memo. at 6).  On the merits, defendants argue that plaintiff fails to establish defendants

interfered with plaintiff's liberty interest and fails to establish that defendants used

constitutionally infirmed procedures (id. at 1-2).  Defendants claimed qualified immunity (id. at

2).  Most of these contentions were discussed above in considering plaintiff's motion.

IV.    Application

        A.    Plaintiff's Motion

        Plaintiff did not follow this Court's procedural rules regarding making a summary

judgment motion, W.D.N.Y. Local Civ. R. 56.1(d), see also id. R. 7.1(e) (papers required to

support summary judgment motions), 56.2 (notice to pro se plaintiff opponents to summary

judgment motions). Failure to submit a Rule 56.1 statement "may constitute grounds for denial of

the motion," id. R. 56.1(a) (emphasis added), including failure to provide citations to evidence in

the record to substantiate the facts alleged in the statement.  This citation requirement helps the

Court to identify the existence of material issues of fact and the evidentiary support for movant's

or opponent's positions.  This Court's  Local Civil Rule 5.2(e), the <u>pro se</u> litigant rule, states that

<u>pro se</u> parties must be familiar with and follow local rules, but (while expressly listing particular

local rules) does not explicitly list Rule 56.1.  Local Rule 56.2 requires notice to a <u>pro se</u> plaintiff

of a pending summary judgment motion, informing that plaintiff that merely reasserting claims

alleged in the complaint will not satisfy responding to a summary judgment motion.

But the lapse in not citing to the evidentiary record could be excused due to his <u>pro se</u>

status, <u>cf.</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) (per curiam) (leeway given to <u>pro se</u> litigants in

their papers), and the Court can consider the merits asserted in plaintiff's motion.  Plaintiff's

motion, despite the caution of Local Rule 56.2, merely recites the allegations from his Complaint

without citation to evidence supporting those claims.  As a result, plaintiff's motion for summary

judgment (Docket No. 47) is **DENIED**.

      B.     Defendants' Cross-Motion

      1.     Merits

Regarding defendants' motion, plaintiff has asserted a liberty interest.  But defendant

Westermeier did not deprive plaintiff of due process in acting as plaintiff's substitute employee

assistant by interviewing inmates plaintiff identified.  As for defendant Selsky, plaintiff does not

have a due process right to an administrative appeal or to a particular result in such an appeal.

Therefore, plaintiff's due process claims against Westermeier and Selsky also fails, as well as so

much of plaintiff's claim against Bradt regarding affording plaintiff employee assistance.

Defendant Bradt, however, relied upon confidential documents that were not revealed or referenced to plaintiff during or following his disciplinary hearing (Docket No. 58, Bradt Decl. ¶¶ 11-14), not even alluded to as a basis for Bradt's punishment. The disciplinary decision (id. Ex. B 000109) lists "hard copy" of "to/from" memoranda (including one from Sergeant Martinez, who provided one of the confidential reports, see Docket No. 69, Ex. A, 000089-90) without alerting plaintiff to the existence of the confidential memoranda Bradt relied upon in reaching his decision. These documents were only recently served upon plaintiff as part of defendants' motion papers (see Docket Nos. 69, 68). Plaintiff generally objects that he was deprived of the evidence against him, obviously without making specific reference to these documents. Failure to produce these documents, to reference them as the basis for Bradt's decision, or even to furnish a justification for their exclusion when challenged here in Court, see Sira v. Morton, 380 F.3d 57, 75 (2d Cir. 2004), violates plaintiff's due process rights. Plaintiff's punishment under Bradt's determination was reduced ultimately because plaintiff was not afforded "notice that certain documentary evidence would be considered" (Docket No. 62, Selsky Decl. ¶ 23, Ex. C000123).

### 2. Qualified Immunity

With plaintiff stating a claim against Bradt only, defendants' alternative assertion of qualified immunity needs to be examined. Defendants argue that Bradt should enjoy immunity as to the denial of employment assistance in obtaining witnesses (Docket No. 64, Defs. Memo. at 23), but they do not address immunity regarding depriving plaintiff of access to the evidence against him.

19

Inmates have a well established due process right, at a minimum, to knowing the evidence that confronts them in a disciplinary hearing, Sira, supra, 380 F.3d at 74, 76 (denying qualified immunity for failure to disclose evidence, identities of confidential informants); Wolff v. McDonnell, 418 U.S. 539, 564 (1974); Francis v. Coughlin, 891 F.2d 43, 47-48 (2d Cir. 1989), and this right existed in August 1999.  As noted by the Second Circuit in Sira,

> "such disclosure affords the inmate a reasonable opportunity to explain his actions and to alert officials to possible defects in the evidence.
> "Courts have long recognized, however, that the right to know evidence supporting prison disciplinary rulings is not absolute.  See Wolff v. McDonnell, 418 U.S. at 564-65.  As the Supreme Court has observed, prison disciplinary proceedings 'take place in tightly controlled environments peopled by those who have been unable to conduct themselves properly in a free society.'  Ponte v. Real, 471 U.S. 491, 497 (1985).  The risks of 'violence or intimidation directed at either other inmates or staff' are real.  Id. at 495.  Thus, when the disclosure of evidence presents such risks, hearing officers may properly decline to inform an inmate of the adverse evidence."

Sira, supra, 380 F.3d at 74-75.  Institutional safety concerns may provide a sufficient reason to decline to inform an inmate of evidence.  Francis, supra, 891 F.2d at 47-48.

Unlike in Sira, 380 F.3d at 75, Bradt in this case did not present a contemporaneous reason for not disclosing these documents.  Only in support of an in camera inspection of these documents was any type of reason given (see Docket No. 58, Bradt Decl. ¶¶ 11-14), that their disclosure would somehow reveal DOCS's procedures and techniques of investigation (id. ¶ 12).  As noted in the Order following the show cause to its production, the Court rejected defendants' rationale first stated in defense counsel's cover letter that they were submitted "for security reasons" this way rather than serving and filing the documents.  They then argued that disclosure would reveal investigative tactics for the facility and claimed the confidentiality declared upon these documents, despite the fact of plaintiff's release from that facility on parole last May.  (See

Docket No. 66, Order at 2.)  As in <u>Sira</u>, <u>see id.</u>, there is nothing in the record to explain why

plaintiff could not have been told the substance of the information that served as the basis for his

discipline without identifying the sources of that information.  Depriving plaintiff of that

information "deprived him of any opportunity to explain or challenge this inculpatory evidence,"

<u>id.</u>  Reviewing the record in the light most favoring plaintiff, he has presented a viable due

process claim and "there is no basis to hold that any reasonable officer could have thought

otherwise."  <u>Id.</u> at 76.  As held in <u>Sira</u>, defendant Bradt is not entitled to qualified immunity on

this due process claim.  <u>Id.</u>

Thus, issues of material fact exist to preclude defendant Bradt summary judgment as to

the due process violation for failing to disclose evidence against plaintiff in his disciplinary

proceeding.

<u>**CONCLUSION**</u>

Plaintiff's motion for summary judgment (Docket No. 47) is **denied**; defendants' cross-

motion for summary judgment dismissing this Complaint (Docket No. 56) is **granted in part** as

to defendants Westermeier and Selsky entirely but in part as to defendant Bradt for so much of

plaintiff's due process claim about affording employee assistance to plaintiff but **denied in part**

as to Bradt as to failing to furnish evidence against plaintiff to him.  The only remaining issue is

plaintiff's claim against defendant Bradt and whatever damages arise from that claim.  The Court

will issue an order setting forth a trial schedule.

        So Ordered.

_____
s/HBS
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       September 2, 2005