UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATHANIEL GATES,

                         Plaintiff,

                                                    **Hon. Hugh B. Scott**

            v.                                       02CV496

                                                    (CONSENT)

DONALD SELSKY, et al.,                              **Order**

                         Defendants.

Before the Court is defendants' motion for reconsideration (Docket No. 72) of the partial

denial of their cross-motion for summary judgment (Docket No. 56).  The parties consented to

proceed before the undersigned as Magistrate Judge (Docket No. 53, Mar. 7, 2005).  Responses

to this motion were due by October 21, 2005, and replies (if any) were due by November 4, 2005,

with argument of this motion initially scheduled for November 9, 2005 (Docket No. 74), the

same date as the final pretrial conference in this action (see Docket No. 71).  Plaintiff filed a

letter motion, however, requesting appointment of counsel (Docket No. 76) which states that he

is currently incarcerated in the Monroe County Jail and that he could not respond to the merits of

this defense motion.  Given his present detention, the November 9 argument and conference were

adjourned (Docket No. 77).

In the September 2, 2005, Decision & Order, the Court granted in part and denied in part

defendants' motion for summary judgment.  In particular, summary judgment was granted as to

defendants Westermeier and Selsky entirely but granted in part as to defendant Bradt for so much

of plaintiff's due process claim about affording employee assistance to plaintiff but denied in part

as to Bradt as for failing to furnish evidence against plaintiff to him.  (Docket No. 70.)

Familiarity with this prior Order is presumed.  The only remaining issue is plaintiff's claim

against defendant Bradt and whatever damages arise from that claim.  The Court issued an Order

setting forth a trial schedule (Docket No. 71).

## BACKGROUND

The present action involves an August 1999 incident in the Attica Correctional Facility

which resulted in a Tier III administrative hearing in which plaintiff, an inmate proceeding pro

se, now claims violated his constitutional rights to due process of law.  Plaintiff has amended the

Complaint several times (Docket Nos. 17 (motion for leave to amend), 25 (Order granting leave

to amend), 27 (Amended Compl.), 30 (motion for leave to amend), 35 (motion for extension of

time to file amended complaint), 36 (Order granting leave to amend), 37 (motion to amend), 39

(Order granting leave), 41 (Amended Complaint)).  He now alleges a single cause of action for

deprivation of due process under the Fourteenth Amendment (Docket No. 41, Am. Compl. ¶¶ 26,

27).  Plaintiff seeks a declaratory judgment that defendants' conduct violated his constitutional

rights; $150,000 in compensatory damages against defendant Selsky, $100,000 against defendant

Bradt, and $75,000 against defendant Westermeier; punitive damages of $20,000 against each

defendant, and other relief (Docket No. 41, Am. Compl., Relief ¶¶ (A)-(D)).

*Factual Allegations*

According to plaintiff's statement of undisputed facts (Docket No. 50) plaintiff was

accused in a misbehavior report on August 10, 1999, by correction officer Garbacz for violating

prison rules 104.11, violent conduct; 104.13, creating a disturbance; 100.11, assault on staff;

106.10, refusing a direct order; and 115.10, refusing a search or frisk (Docket No. 50 ¶ 4).  Later

that day, plaintiff was accused in a second misbehavior report by correction officer Verrastro for

violation of prison rules 113.10, weapon, and 113.25, drug possession (id. ¶ 5).  Plaintiff was

immediately removed from general prison population and placed in  housing unit.  Once he was

served with the misbehavior reports, plaintiff selected defendant Correction Officer

R. Westermeier as his employee assistant.  (Id. ¶ 6.)  Plaintiff claims that Westermeier denied

him assistance in responding to the second misbehavior report (id. ¶ 7).  A combined disciplinary

hearing was conducted before defendant Captain Mark Bradt, on September 7, 1999 (id. ¶¶ 8, 9;

see Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 2).  There, plaintiff objected to

Westermeier not providing assistance regarding the second report (Docket No. 50, Pl. Statement

¶ 9).  The hearing was conducted in disregard to plaintiff's objections and plaintiff was found

guilty of all charges (id. ¶¶ 10-11).  He was sentenced to twelve months in special housing unit

(or "SHU"), loss of package, commissary, and telephone privileges, eighteen months loss of

personal clothing, and recommendation of loss of good time (id. ¶ 11; Docket No. 57, Defs.

Statement ¶ 42).  Plaintiff filed a timely appeal to defendant Donald Selsky, director of Special

Housing Units within the Department of Correctional Services, alleging that he was denied

assistance and was not informed, notified, or allowed to comment upon the evidence against him

(Docket No. 50, Pl. Statement ¶ 12).  On or about November 17, 1999, defendant Selsky

affirmed the disciplinary hearing's determination (id. ¶ 13).

Plaintiff claims that he was held in special housing unit for 365 days due to defendant

Selsky's failure to reverse this disciplinary decision.  (Docket No. 49, Pl. Aff. ¶ 22.)  Defendants,

however, contend that plaintiff only served six months in special housing unit on defendant

Bradt's determination (Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 15).  Selsky modified Bradt's determination on the loss of good time, reducing it from twelve months to six (Docket No. 62, Selsky Decl. ¶ 19, Ex. C121-A) and plaintiff served the balance of the 365 days on other, unrelated disciplinary charges.  Plaintiff filed an Article 78 petition in New York State Supreme Court challenging Bradt's determination on or about May 31, 2000 (Docket No. 50, Pl. Statement ¶ 14; <u>see</u> Docket No. 59, Fritschi Decl. ¶¶ 4, 5, Ex. A).  Selsky administratively reversed the misbehavior reports; plaintiff claims that Selsky conceded to violation of plaintiff's rights (Docket No. 50, Pl. Statement ¶ 15; <u>see also</u> Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 15 (agreeing that Selsky administratively reversed and expunged the disciplinary reports)).  Selsky issued a memorandum on July 21, 2000, expunging the second misbehavior report stating the reason for this action was because it was "modified after discussion with AG's office [d]ue to denial of assistance on charges for C.O. Verrastro report."  (Docket No. 50, Pl. Statement ¶ 16; Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 16; Docket No. 62, Selsky Decl. ¶ 19, Ex. C121-A.)  Selsky then issued a second memorandum on August 22, 2000, providing a complete expungement of all charges, again allegedly reversed following discussion with the Attorney General's office "due to failure to provide inmate with notice that certain documentary evidence would be considered" (Docket No. 50, Pl. Statement ¶ 17; Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 17; Docket No. 62, Selsky Decl. ¶ 23, Ex. C000123).  Selsky submitted these memoranda in state court as support for his motion to dismiss the Article 78 petition as being moot (Docket No. 50, Pl. Statement ¶ 18; Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 18; <u>see</u> Docket No. 59, Fritschi Decl. Ex. B).

Prior to his release from Attica Correctional Facility on parole (see Docket No. 57, Defs. Statement ¶ 81), plaintiff moved for summary judgment (Docket No. 47).

*Defendants' Cross-Motion*

Defendants cross-moved for an order denying plaintiff summary judgment and for summary judgment as to them to dismiss the Complaint (Docket No. 55).   Pertinent to this motion for reconsideration, defendants contend that Bradt, as hearing officer, had sole discretion to affirm the charges based on the evidence presented to him and had discretion to impose penalties (Docket No. 57, Defs. Statement ¶¶ 25-26; Docket No. 62, Selsky Decl. ¶¶ 5, 6).   Bradt interrogated those of plaintiff's identified witnesses who agreed to participate; all said they saw the incident and saw plaintiff had complied with the search procedures (Docket No. 57, Defs. Statement ¶¶ 28-31).   Bradt then took the testimony of two officers (id. ¶ 33).   Bradt states in his Declaration that he relied upon a confidential statement made by another officer (Docket No. 58, ¶¶ 12-13, 14).   These documents were subject to the Order to Show Cause (see Docket Nos. 66 (Order to Show Cause), 68 (Order compelling filing and service), 69 (defendants' production of documents)).

Defendants submitted for in camera review four pages from an exhibit to one of the defendant's Declarations[1].   The Court issued an Order to Show Cause, returnable August 3, 2005, on why these documents should be reviewed in camera without service upon plaintiff (Docket No. 66).   The Court then ordered defendants either to serve and file these four documents or they would be excluded from judicial consideration (Docket No. 68).   Defendants filed and served these documents (Docket No. 69, Decl., Ex. A, with certificate of service).

---

[1]See Docket No. 58, Bradt Decl., Ex. B88-91.

*Prior Decision*

This Court denied plaintiff's motion for summary judgment and granted in part and denied in part defendants' motion as previously outlined.

*Motion for Reconsideration*

Defendants now move to reconsider the denial of summary judgment as to Bradt on all claims, and now seek summary judgment in its entirety to all defendants (Docket No. 72). Plaintiff had not responded to the substance of the defense motion. Rather, Plaintiff states in his letter motion seeking appointed counsel that he is unable to respond to defendants' motion in a timely fashion due to his recent detention in Monroe County and being deprived his legal papers (see Docket No. 76). He also argues, in effect, for reconsideration of the denial of summary judgment to plaintiff as against defendants Selsky and Westermier, arguing generally that they are as liable as Bradt and should remain as defendants in this case (id.).

Determination of the defense motion will also impact upon the necessity of addressing plaintiff's motion for appointment of counsel.

## DISCUSSION

I.   Summary Judgment Standard

Summary judgment (or, as here, reconsideration of summary judgment motions) is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue

of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

II.      Reconsideration of Defense Cross-Motion

At issue here is plaintiff's remaining claims against Bradt.  Defendants contend that the Court should reconsider its earlier decision partially denying summary judgment to Bradt on two grounds.  First, they argue that plaintiff lacks a liberty interest under Sandin v. Conner, 515 U.S. 472 (1995), because the measure of the atypical hardship is the time actually served in special housing, not the amount of time sentenced (when these two periods differ) (Docket No. 73, Defs. Memo. of Law at 2-4).  Second, they point out that the suppressed documents involved charges of which plaintiff was not found guilty (id. at 4-6).

A.      Liberty Interest

For plaintiff's due process violation claim, he has to establish that he lost a cognizable liberty interest.  Under the analysis of Sandin v. Conner, supra, 515 U.S. at 484, and its progeny, plaintiff argues that he suffered a loss of liberty for being placed in SHU for twelve months.  In this Circuit, three factors must be evaluated to determine if an inmate has a constitutionally significant liberty interest apart from the normal deprivations inherent with imprisonment; the effect of segregation on the length of the inmate's imprisonment, comparison of conditions in SHU with that of the general population, and the duration of the segregation.  Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998).  On the duration of segregation element, prolonged confinement in SHU, or a sentence for prolonged confinement, has been held in this Circuit to be atypical and a deprivation of an inmate's liberty.  See Colon v. Howard, 215 F.3d 227 (2d Cir. 2000) (305 days SHU confinement); Sims v. Artuz, 230 F.3d 14 (2d Cir. 2000) (7 months SHU confinement in restraints, aggregated sentences to SHU of 3½ years); Lee v. Coughlin, 26 F. Supp. 2d 615 (S.D.N.Y. 1998) (376 days SHU confinement); see also Giano v. Selsky, 238 F.3d 223, 225-26 (2d Cir. 2001) (125 days SHU confinement in new facility after 670 days confinement in former facility, Second Circuit aggregated two confinements).

Defendants contend that plaintiff was confined to the special housing unit on Bradt's adoption of the misbehavior reports at issue here for only six months (Docket No. 57, Defs. Statement, Response to Pl. Statement ¶ 15; Docket No. 62, Selsky Decl. ¶¶ 24-27, 29-31, Ex. D131-34).  Selsky states that, by the time he reversed the misbehavior reports, plaintiff had served all the special housing unit time imposed by Bradt (Docket No. 62, Selsky Decl. ¶ 24), but plaintiff meanwhile accumulated other misbehavior reports which resulted in penalties that he

8

served consecutively to the SHU time he had under the misbehavior reports at issue in this case (id. ¶¶ 25-26).  When Selsky reversed Bradt's determination, the time plaintiff served was credited to other misbehavior penalties (id. ¶¶ 27, 29-31, Ex. D131-34).  They contend that, as to Selsky himself, at most he would be liable for three months (from when he initially affirmed Bradt's decision until Selsky's expungement of the discipline) (Docket No. 64, Defs. Memo. at 8 n.3).  Defendants conclude that the conditions within SHU are not dramatically different from general prison population (id. at 8-9, citing Husbands v. McClellan, 990 F. Supp. 214, 218-19 (W.D.N.Y. 1998) (Larimer, Ch. J.)).

This Court previously found that plaintiff was placed in special housing unit on August 10, 1999, following the incident, and defendant Selsky expunged the misbehavior reports on August 20, 2000.  In Sims v. Artuz, 230 F.3d 14, 23 (2d Cir. 2000), the Second Circuit held that a sentence of one year in SHU was a sufficient length to be atypical under Sandin.  Here, defendants argue that plaintiff was confined only six months in SHU.  They now argue that case law in this Circuit (and from this Court) calls for the time actually served, rather than the discipline sentence, to determine whether SHU confinement is atypical to create a liberty interest under Sandin and its progeny, Leevon v. Goord, No. 99CV6208, 2003 U.S. Dist. LEXIS 18529 (W.D.N.Y. Sept. 4, 2003) (Siragusa, J.) (citing Colon, supra, 215 F. 3d at 231).  The duration of the sentence, however, may have some impact upon whether an official is entitled to qualified immunity (Docket No. 73, Defs. Memo. at 2-3, 3 n.1, citing Hanrahan v. Doling, 331 F.3d 93 (2d Cir. 2003)).  From defendants' time calculations, plaintiff served from August 10, 1999, through February 6, 2000 (see Docket No. 62, Selsky Decl. ¶¶ 11, 13, 18, 29-31, Ex. D, Bates No. 132, 134), on the misbehavior reports at issue here, or 149 days in SHU on these charges, while

serving the balance of the one year plaintiff claims (to August 2000) for other disciplinary

actions.

Cases which held that a period of incarceration in SHU of about 149 days or slightly more

were atypical under Sandin analysis involved aggregating other disciplinary sentences (whether

in that facility or in another facility) or involved additional punitive conduct such as keeping the

inmate in restraints while in SHU.   Sims, supra, 230 F.3d 14 (2d Cir. 2000) (7 months SHU

confinement in restraints, aggregated sentences to SHU of 3½ years); Giano, supra, 238 F.3d at

225-26 (2d Cir. 2001) (125 days SHU confinement in new facility after 670 days confinement in

former facility, Second Circuit aggregated two confinements); see also Luna v. Pico, 356 F.3d

481, 487 n.3 (2d Cir. 2004) (Second Circuit assumed without deciding that 204 days in special

housing was atypical); cf., e.g., Sealy v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999) (101 days held

not to be atypical).  This 149-day period is within the "relatively long" period of 125 to 288 days

that the Second Circuit has held required specific findings by this Court before it can conclude

that this term in special housing is "atypical" under Sandin.  Sims, supra, 230 F.3d at 23; see

Taylor v. Rodriguez, 238 F.3d 188, 195-96 (2d Cir. 2001) (remanding for specific findings of

atypicality where plaintiff was in special housing for five months).

Plaintiff alleges in his Amended Complaint (Docket No. 41, ¶¶ 22-25) and repeats in his

affidavit in support of his summary judgment motion (Docket No. 49, ¶¶ 26-29) that confinement

in SHU deprived him of access to vocational programs, loss of privileges available to inmates in

general population (such as time outside of the cell, commissary purchases, and daily visits).  In

SHU, inmates face initial strip searches, pat down frisks prior to leaving cell, leaving the cell in

handcuffs and waist chains, limited number of showers and visitors per week, restrictions on

access to commissary items or retained personal possessions.  Plaintiff also claims that, due to

his incarceration in SHU, he lost the ability to have his status reduced from maximum security to

medium security, hindering his chance for release upon parole (Docket No. 41, Am. Compl.

¶ 25; Docket No. 49, Pl. Aff. ¶ 29), but the Amended Complaint and affidavit were written

before plaintiff was released on parole in May 2005.

Defendants respond that some of the privileges plaintiff complains that he lost upon his

placement in SHU he had lost due to his disciplinary record in general.  For example, plaintiff

was not entitled to be reclassified from maximum security to medium security due to his

disciplinary record and his unwillingness to cooperate with certain rehabilitative programs

(Docket No. 60, Granger Decl. ¶¶ 20-30; Docket No. 57, Defs. Statement of Undisputed Facts

¶¶ 71-80).

Unlike the other cases held to be atypical where the inmates were kept in restraints while

also in SHU, plaintiff here does not allege such conditions, just complaining about the loss of

privileges inherent with disciplinary detention in SHU.  These allegations do not sufficiently

establish atypical confinement under <u>Sandin</u> and its progeny to constitute a deprived liberty

interest.  As a result, all defendants, including Bradt, are not liable for violating plaintiff's due

process liberty interest in the disciplinary proceeding against plaintiff that lead to his typical

confinement in SHU.

B.      Bradt as Hearing Officer

Plaintiff alleges that Bradt is liable for his conduct of the disciplinary hearing as the

hearing officer by depriving him of employee assistance and by not affording plaintiff access to

the evidence against him.  Defendants counter that plaintiff made only conclusory allegations

11

insufficient to grant him summary judgment (Docket No. 64, Defs. Memo. at 18).  Plaintiff

makes no specific allegations of the flaws in Bradt's conduct of the proceedings against plaintiff.

Alternatively, defendants argue that Bradt should enjoy qualified immunity because, after hearing

the witnesses called on plaintiff's behalf, it was reasonable for him not to call the other witnesses

plaintiff identified (id. at 23).  This Court found that an issue of fact existed regarding not

informing plaintiff of the evidence against him (Docket No. 70, Order at 18, 15).  The particular

documents that the Court found should have been produced to plaintiff were for charges of which

plaintiff was found not guilty.

As a hearing officer, Bradt could refuse to call witnesses for irrelevance, lack of necessity

or the hazards presented in that case.  See Wolff v. McDonnell, 418 U.S. 539, 566 (1974);

Russell v. Selsky, 35 F.3d 55, 59 (2d Cir. 1994).  Plaintiff, when informed that four of his

original fifteen witnesses declined to testify and not all eleven witnesses would be heard, called

five witnesses.

Given the finding above that plaintiff has not alleged a liberty interest in the resulting

punitive confinement, this issue of fact as to the evidence not afforded to plaintiff is moot.  As a

result, the last remaining issue for trial is now removed and summary judgment is **granted** to

defendant Bradt, as well as previously granted to the other defendants, against all claims asserted

by plaintiff.

III.    Plaintiff's Motion for Appointment of Counsel (Docket No. 76)

Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants.

Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F.2d 22, 23 (2d Cir. 1988).

Assignment of counsel in this matter is clearly within the judge's discretion.  See In re Martin-

<u>Trigona</u>, 737 F.2d 1254 (2d Cir. 1986).  The factors to be considered in deciding whether or not

to assign counsel are set forth by the Second Circuit in <u>Hodge v. Police Officers</u>, 802 F.2d 58 (2d

Cir. 1986).  Counsel may be appointed in cases filed by indigent plaintiffs where it appears that

such counsel will provide substantial assistance in developing petitioner's arguments, the

appointment will otherwise serve the interests of justice, and where the litigant has made "a

threshold showing of some likelihood of merit."  <u>Cooper v. A. Sargenti Co.</u>, 877 F.2d 170, 174

(2d Cir. 1989).

        Plaintiff's one-page letter does not state that his current financial status, but given that he

was recently released from state custody last May (Docket No. 57, Defs. Statement ¶ 81; Docket

No. 61, Longo Decl. ¶ 10, Ex. B), it is unlikely his circumstances have improved to change his <u>in</u>

<u>forma pauperis</u> status he received after he filed this action (<u>see</u> Docket No. 3).  He does not

indicate the efforts he undertook to locate counsel since May.  The Court has reviewed the facts

presented herein in light of the factors required by law.  Based on this review (and especially

given the discussion above regarding reconsideration of defendants' summary judgment motion),

plaintiff's motion for appointment of counsel is **DENIED**, and, given the disposition above to

grant summary judgment in its entirety to the last remaining defendant, this denial is **with**

**prejudice**.

<u>CONCLUSION</u>

        For the reasons stated above and upon reconsideration of the earlier decision, defendants'

cross-motion for summary judgment dismissing this Complaint (Docket No. 56) is **granted in its**

**entirety as to all defendants, including defendant Bradt** since plaintiff lacked a cognizable

liberty interest.

13

Plaintiff's motion for appointment of counsel (Docket No. 76) is **denied**.

The Court's previous Order (Docket No. 71) scheduling a trial for January 23, 2006, is **revoked**.  The Court Clerk is instructed to enter judgment as to all parties consistent with this Order and the previous Order (Docket No. 70) and close this case.

The Clerk is to send a copy of this Order to plaintiff's presumed last address at the Monroe County Jail, 130 South Plymouth Avenue, Rochester, New York.

So Ordered.

_____
s/HBS
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       November 22, 2005